IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal Case No. 4:17cr003 (RCY) |
| | ) | |
| EDWARD ZINNER, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

**MEMORANDUM OPINION**

This matter is before the Court on Defendant's *pro se* Motion for Compassionate Release (ECF No. 155) ("*pro se* Motion for Compassionate Release"), Motion for Compassionate Release filed by counsel (ECF No. 169) ("Motion for Compassionate Release"), Motion to Expedite Release to Home Confinement (ECF No. 172), and *pro se* Motion to Strike (ECF No. 174). The Court has also reviewed related responses and exhibits, including but not limited to ECF Nos. 156, 162, 166, 167, 168, 170, 171, 173, 175,[1] 176, 177, 178, 179, 180, 181, 182, 183, and 186. The document filed as a submission to the Court (ECF No. 178) contains a motion, and the Clerk will be directed to docket that submission as *pro se* Motion to Remove Counsel (ECF No. 178). The Court has reviewed these documents and all exhibits, and the matter is ripe for disposition. The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. For the reasons that follow, the Court will deny the *pro se* Motion for Compassionate Release (ECF No. 155), deny the Motion for Compassionate Release (ECF No. 169), deny the Motion to

---

[1] Some of these responses and exhibits address Zinner's request for compassionate release as well as his pending section 2255 petition. The Court would ordinarily rule on a pending section 2255 petition first, but given the circumstances of the pandemic, the Court finds it prudent to consider the motions for compassionate release first.

Expedite Release to Home Confinement (ECF No. 172), deny the *pro se* Motion to Strike (ECF No. 174), and grant the *pro se* Motion to Remove Counsel (ECF No. 178).

## I. BACKGROUND

On January 11, 2017, Edward Zinner ("the Defendant" or "Zinner") was indicted on twenty-one counts as follows: Counts One through Fourteen, Wire Fraud, in violation of 18 U.S.C. § 1343, and Counts Fifteen through Twenty-One, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957. (Indictment, ECF No. 1.) On March 27, 2017, the Defendant was arraigned, and a jury trial was scheduled for September 12, 2017. (ECF No. 14.) On August 14, 2017, the Court issued an order granting the Defendant's motion to continue the trial date and rescheduled the jury trial for October 31, 2017. (ECF No. 36.) Also on August 14, 2017, a superseding indictment was returned, charging the defendant as follows: Counts One through Seventeen, Wire Fraud, in violation of 18 U.S.C. § 1343, and Counts Eighteen through Twenty-Four, Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activity, in violation of 18 U.S.C. § 1957. (Superseding Indictment, ECF No. 37.) The Defendant was arraigned on the superseding indictment on August 28, and the trial date remained October 31, 2017. (ECF No. 41.) From the time from the filing of the original indictment until the Defendant pled guilty, several motions were filed, and orders were issued.

On October 13, 2017, the parties scheduled a plea hearing to take place on October 17 before the Honorable United States District Judge Henry C. Morgan. On October 17, 2017 Zinner pled guilty to Count Nineteen of the Superseding Indictment with a written Plea Agreement and written Statement of Facts. (Plea Agreement, ECF No. 59; Statement of Facts, ECF No. 60.) The Court conducted a plea colloquy pursuant to Rule 11 of the Federal Rules of

Criminal Procedure and accepted the plea. (Oct. 17, 2017 Tr., ECF No. 123 at 1–35.)

According to the Presentence Investigation Report ("Sentencing PSR") filed on March 30, 2018, before the sentencing hearing, the advisory Guidelines range was 188 to 235 months, but because the statutory maximum sentence for this offense was 120 months, Zinner's restricted Guidelines range was 120 months of imprisonment. (Sentencing PSR, ECF No. 85, Part D.)  The Final PSR filed after Zinner was sentenced reflects the Court's rulings at the sentencing hearing that resulted in a reduced advisory Guidelines range of 78 to 97 months.  (PSR, ECF No. 107, Part D.)  The transcript reflects that the Court granted defense objections that resulted in a reduction of the offense level from 34 to 26.  (Apr. 12, 2018 Tr. at 1–150, ECF No. 121.)  On April 12, 2018, after hearing evidence and addressing objections, the Court sentenced Zinner to 120 months of imprisonment to be served consecutively to a state sentence or sentences imposed in Virginia Beach Circuit Court on or about July 26, 2017. (J. at 1–2, ECF No. 104; Apr. 12, 2018 Tr. at 144–45.)  The record and the PSR reflect that Zinner was taken into federal custody by way of a writ that was issued on March 30, 2017, and the record also reflects that Zinner had time left to serve on the state sentence or sentences imposed in Virginia Beach Circuit Court on or about July 26, 2017. (Petition and Writ, ECF No. 7; Writ, ECF No. 9; PSR ¶¶ 58-59; J. at 2; Apr. 12, 2018 Tr. at 144–45.)[2]  BOP records indicate that the sentence or sentences imposed in Virginia Beach Circuit Court have been completed because there is no detainer in place. (Mot. Comp. Release Ex. 4 at 4, ECF No. 169-4.)  Zinner has an anticipated release date of November 4, 2026.  (Mot. Comp. Release at 3; Inmate Locator (bop.gov) & enter Zinner's name or inmate

---

[2] Zinner "contends that the start date on his federal sentence was August 29, 2017," (Mot. Comp. Release at 3), but this opinion does not address that issue.

number).  Thus, he has approximately four years and ten months left to serve according to the BOP.

Zinner filed the *pro se* Motion for Compassionate Release (ECF No. 155) on May 18, 2020.  An order was issued on September 10, 2020, appointing counsel to represent Zinner with regard to the issue of compassionate release. (ECF No. 161.)  Counsel filed the Motion for Compassionate Release (ECF No. 169) on October 13, 2020 and the Motion to Expedite Release to Home Confinement (ECF No. 172) on December 8, 2020.  The United States responded on December 14, 2020. (ECF No. 173.)  Thereafter, Zinner filed the *pro se* Motion to Strike (ECF No. 174), seeking to strike the response of the United States.  Zinner also filed the *pro se* Motion to Remove Counsel (ECF No. 178).[3]

This case was reassigned from Judge Morgan to Judge Allen on September 3, 2020, and it was reassigned to the undersigned on November 24, 2020.[4]

In the Motions for Compassionate Release and supporting documents, Zinner argues that he is at a higher risk for severe illness from COVID-19 due to several conditions: diabetes, heart issues, high blood pressure, high cholesterol, and age. (*Pro Se* Mot. Comp. Release at 12-13.) He states that his heart disease includes "Premature Ventricular, Atrial Contractions, Supraventricular Tachycardia, an enlarged heart and a previous heart attack due to Atrial Fibrillation." (Mot. Comp. Release at 1.)  Zinner contends that the BOP is not able to protect its

---

[3] Given Zinner's dissatisfaction with counsel who was appointed to represent him on the issue of compassionate release, the Court will grant the *pro se* Motion to Remove Counsel (ECF No. 178).

[4] The initial reassignment also reflects that the case was reassigned to Judge Hudson, but since Judge Hudson handles almost exclusively cases in the Richmond Division, this initial reassignment was in error, resulting in an immediate reassignment, on the same day, to Judge Allen.  While Zinner assigns a nefarious motive to these reassignments and contends that there has been "judge shopping or judge shuffling" in this case, (*see, e.g.,* ECF No. 193 at 14; ECF No. 187 at 1; ECF No. 178-3 at 7), there is no validity to these claims.  The reassignment to the undersigned took place when the district judges in the Norfolk division reassigned cases to the undersigned as a result of the undersigned's confirmation and appointment as a district judge.

population against COVID-19. (*Id*. at 6–8, 24–25.) He also contends that the COVID-19 situation in prisons in general, including FCI Loretto, combined with his higher risk necessitates his release. (*Id*. at 5–8, 24–34.) He argues that he is a low risk for recidivism, especially given the non-violent nature of his offense. (Id. at 3, 9–10, 34–37.) Zinner plans to live with his sister and seek employment if he is released. (*Id*. at 2, 38.)

## II. LEGAL STANDARD: COMPASSIONATE RELEASE UNDER THE FIRST STEP ACT OF 2018

As amended by the First Step Act, 18 U.S.C. § 3582(c)(1)(A) authorizes courts to "reduce the term of imprisonment" of a defendant for "extraordinary and compelling reasons," "upon motion of the Director of the Bureau of Prisons," or "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." 18 U.S.C. § 3582(c)(1)(A)(i). Once the administrative remedies under § 3582(c)(1)(A) have been exhausted or waived, the Court may reduce or modify a sentence when "extraordinary and compelling reasons warrant such a reduction." *Id*. Section 3582(c)(1)(A) also requires courts to consider "the factors set forth in section 3553(a) to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentencing modification. *Id*.

It is settled that the burden is on the defendant to prove that extraordinary and compelling reasons exist for compassionate release under § 3582(c)(1)(A)(i). *White v. United States*, 378 F. Supp. 3d 784, 785 (W.D. Mo. 2019). While courts do not "minimize the risks that COVID-19 poses in the federal prison system," the "mere existence of COVID-19 in society and the

possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). It is also generally true that "chronic conditions that can be managed in prison are not a sufficient basis for compassionate release." *United States v. Molina*, No. 3:15cr31, 2021 WL 1323402, at *2 (E.D. Va. Apr. 8, 2021) (citation omitted). "In assessing whether the record shows the existence of extraordinary and compelling reasons for compassionate release, courts consider, *inter alia*, the guidance of the CDC [Centers for Disease Control and Prevention], and non-binding policy statements of the United States Sentencing Guidelines." *Id.* "[T]o constitute extraordinary and compelling reasons for compassionate release, medical conditions must be serious." *Id.* To establish the existence of "extraordinary and compelling" reasons for compassionate release because of COVID-19,[5] a defendant generally must show "both a particularized susceptibility to the disease and a particularized risk of contracting the disease at his prison facility." *United States v. White*, No. 2:07cr150, 2020 WL 1906845, at *1 n.2 (E.D. Va. Apr. 17, 2020) (quoting *United States v. Feiling*, 453 F. Supp. 3d 832, 840 (E.D. Va. 2020)).

In *United States v. McCoy*, 981 F.3d 271, 276 (4th Cir. 2020), the Fourth Circuit held that "there currently exists no 'applicable policy statement'" because the Sentencing Commission has not issued a policy statement since the passage of the First Step Act. *Id.* at 281. Therefore, until the Sentencing Commission issues an updated policy statement, "district courts are 'empowered to consider any extraordinary and compelling reason for release that a defendant might raise.'"

---

[5] Zinner, age 62, claims that he is at a higher risk for severe illness from COVID-19 due to several conditions: diabetes, heart issues, high blood pressure, high cholesterol, and age. (*Pro Se* Mot. Comp. Release at 12.) He states that his heart disease includes "Premature Ventricular, Atrial Contractions, Supraventricular Tachycardia, an enlarged heart and a previous heart attack due to Atrial Fibrillation." (Mot. Comp. Release at 1.)

*Id.* at 284 (alteration omitted) (quoting *United States v. Brooker*, 976 F.3d 228, 230 (2d Cir. 2020)).

Although the policy statement in U.S.S.G. § 1B1.13 is no longer binding on this Court after the Fourth Circuit's decision in *McCoy*, many courts are treating § 1B1.13 "as providing useful guidance about how the Court should exercise its discretion under § 3582(c)(1)(A)," but they are not "treat[ing] its provisions as binding." *United States v. Dean*, No. 15-CR-0339(1), 2020 WL 7055349, at *1 (D. Minn. Dec. 2, 2020) (citing *McCoy*, 981 F.3d at 281); *see also United States v. Spencer*, No. 2:11cr30, 2021 WL 713287, at *2 (E.D. Va. Feb. 24, 2021) (noting that "the policy statement in U.S.S.G. § 1B1.13 is no longer binding . . . after . . . *McCoy*," but that "the court finds certain of its provisions useful in addressing [compassionate release motions]").

Section 1B1.13's guidance provides that a defendant's medical conditions, age, family circumstances, or other circumstances, either singly or in combination, can prove sufficiently extraordinary and compelling to justify compassionate release. U.S.S.G. § 1B1.13, application notes 1(A)-(D). It advises that, to be extraordinary and compelling, a defendant's medical conditions must be either "terminal . . . with an end of life trajectory" or must "substantially diminish[] the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." § 1B1.13, application note 1(A).

Similarly, a defendant may be released based on his advanced age when he "is at least 65 years old," "is experiencing a serious deterioration in physical or mental health because of the aging process," and "has served at least 10 years or 75 percent of his or her term of imprisonment." § 1B1.13, application note 1(B). Defendants may also seek compassionate

7

release based on family circumstances, including when the caregiver of a defendant's minor child has died or become incapacitated, or when the defendant's spouse or partner has become incapacitated and the defendant constitutes the only available caregiver. § 1B1.13, cmt. application note 1(C). Finally, the Sentencing Guidelines contemplate situations in which "there exists in the defendant's case an extraordinary and compelling reason [for compassionate release] other than, or in combination with, [the defendant's medical conditions, age, and family circumstances]." § 1B1.13, cmt. application note 1(D).

Even if extraordinary and compelling reasons exist for a reduction in sentence, 18 U.S.C. § 3582(c)(1)(A) requires courts to consider "the factors set forth in section 3553(a) [of Title 18] to the extent they are applicable" and "applicable policy statements issued by the [United States] Sentencing Commission" before granting a sentence modification. To that end, § 3553(a) requires courts to consider, among other factors, the nature and circumstances of the underlying offense and the history and characteristics of the defendant, as well as the need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence and protect the public from further crimes of the defendant. 18 U.S.C. § 3353(a)(1)-(2).

The Fourth Circuit provided additional guidance in *United States v. Kibble*, 992 F.3d 326 (4th Cir. 2021). It explained that the district court must "reconsider[] the § 3553(a) factors in view of the extraordinary and compelling circumstances present in [the defendant's] case." *Id*. at 332. In his concurring opinion, Chief Judge Gregory makes it even more clear that the district court may not "fulfill its duty to reconsider the § 3553(a) factors by merely recounting the considerations that supported the original sentence." *Id*. at 335 (Gregory, C.J., concurring). "Section 3582(c)(1) necessarily envisions that the § 3553(a) factors may balance differently upon

a motion for compassionate release than they did at the initial sentencing." *Id*. "If a district court's original § 3553(a) analysis could always prove that a sentence reduction would intolerably undermine the § 3553(a) factors, then 18 U.S.C. § 3582(c)(1) would, in effect, be a nullity." *Id*. Judge Gregory notes that "[a] day in prison under the current conditions is a qualitatively different type of punishment than one day in prison used to be," and that "[t]hese conditions, not contemplated by the original sentencing court, undoubtedly increase a prison sentence's punitive effect." *Id*. at 336.

Courts must also consider "evidence of rehabilitation and other post-conviction conduct." *United States v. Brown*, No. 3:90cr113, 2021 WL 3206548, *2 (E.D. Va. 2021) (citing *United States v. Martin*, 916 F.3d 389, 397–98 (4th Cir. 2019) (requiring consideration of post-conviction evidence and statutory sentencing factors in the context of a sentence reduction sought pursuant to § 3582(c)(2)); *United States v. McDonald*, 986 F.3d 402, 412 (4th Cir. 2021) (extending *Martin* to motions filed pursuant to § 3582(c)(1)(B))). The *Brown* decision also notes that a defendant's "rehabilitation alone does not provide sufficient grounds to warrant a sentence modification." *Id*. (citing 28 U.S.C. § 994(t)).

Additionally, the Sentencing Commission has advised courts to consider whether, based on the factors set forth in 18 U.S.C. § 3142(g), a defendant would present a danger to the safety of any other person or to the community if released.[6] U.S.S.G. § 1B1.13(2). As noted herein,

---

[6] As modified in the context of a compassionate release motion, before releasing a defendant, courts should consider: (1) the nature and circumstances of the offense of conviction, including whether the offense is a crime of violence, a violation of § 1591, a terrorism offense, or an offense involving a minor victim, controlled substance, firearm, explosive or destructive device; (2) the weight of the evidence against the defendant; (3) the history and characteristics of the defendant, including his or her character, physical and mental condition, family and community ties, financial resources, history of substance abuse and criminal history, as well as whether at the time of the instant offense, the defendant was on a period of probation, parole or other form of release; and, (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release. 18 U.S.C. § 3142(g)(1)-(4).

pursuant to *United States v. McCoy*, the policy statement is not binding, but it provides useful guidance.

Ultimately, the Court may reduce a defendant's sentence under § 3582(c)(1)(A) only after (1) the defendant establishes an extraordinary and compelling reason for the reduction, and (2) the Court finds that a reduction in the defendant's sentence would not undermine the relevant § 3553(a) factors and any applicable policy statements issued by the Sentencing Commission.

### III. ANALYSIS

It is unclear whether Zinner exhausted his administrative remedies as required. But given the period of time that has passed since the motions for compassionate release were filed, the Court assumes that administrative remedies have been exhausted and, if not, the Court waives that requirement.[7]

After a careful review of the motions, response, exhibits, including in particular the medical records, and other related documents, the Court concludes that Zinner's health conditions, although serious, do not support a finding of extraordinary and compelling reasons for a reduction in his sentence. The medical records indicate that Zinner has hypertension, hyperlipidemia, heart disease, Type II diabetes, and anxiety, but the records also indicate that these conditions appear to be well-managed. (ECF Nos. 167, 170.) His Type II diabetes is reportedly controlled through diet. (PSR ¶ 77; Probation Office Memorandum at 2, ECF No. 171.) Medical records also indicate a prior heart attack. (Probation Office Memorandum at 2 ("ST elevation myocardial infarction (STEMI)"); *Pro se* Mot. Comp. Release at 12 ("Prior heart attack-A-Fib"); Mot. Comp. Release at 1; ECF Nos. 167 at 12, 170 at 11 ("History of MI").)

---

[7] The Court may waive the exhaustion requirement in certain circumstances. *United States v. Robinson,* No. 3:10cr261, 2020 WL 4041436, at *3 (E.D. Va. July 17, 2020).

The CDC provides guidance regarding certain medical conditions and distinguishes between individuals with certain conditions who "are more likely to get severely ill from COVID-19" and those whose conditions "can make you more likely to get severely ill from COVID-19." *See* People with Certain Medical Conditions | CDC (Updated Dec. 14, 2021). According to the CDC, heart disease, hypertension, and diabetes "can make you more likely to get severely ill from COVID-19." (*Id*.) Hyperlipidemia is not on the CDC list. But where a defendant is receiving medical treatment to manage his medical conditions, courts have found that these conditions do not establish a particularized susceptibility to COVID-19. *See United States v. Reid*, No. 2:02cr172, 2020 WL 7318266, at *2 (E.D. Va. Dec. 10, 2020) (hypertension being treated so defendant not "particularly susceptible to COVID-19"); *Barrett v. United States*, No. 4:15cr47, 2020 WL 6206008, at *3 (E.D. Va. Oct. 22, 2020) (hypertension combined with defendant's age and medical treatment to manage his hypertension does not place him at increased risk); *McKenith v. United States*, No. 7:14cr26, 2021 WL 4527243, at *5 (E.D.N.C. Oct. 4, 2021) (compassionate release denied despite heart conditions and hypertension); *United States v. Volious*, No. 3:17cr575, 2020 WL 5988143, at *3 (D.S.C. Oct. 8, 2020) (compassionate release denied despite heart conditions, sleep apnea, and asthma); *United States v. Austin*, 825 F. App'x 324 (6th Cir. 2020) (affirming compassionate release denial despite inmate having heart conditions and being immunocompromised); *United States v. Feiling*, 453 F. Supp. 3d 832 (E.D. Va. 2020) (denying compassionate release despite inmate having diabetes, hypertension, obesity, respiratory issues, and metabolic syndrome); *United States v. McKay*, No. 18cr305, 2020 WL 7398865 (D. Md. Dec. 17, 2020) (compassionate release denied despite inmate having hypertension and borderline obesity); *United States v. Wright*, No. 17-0388, 2020 WL 2571198 (D. Md. May 21, 2020) (denying compassionate release to defendant at the age of 66

with diabetes, hypertension, chronic kidney disease, asthma, and obesity); *United States v. Barringer*, No. 13-0129, 2020 WL 2557035, at *4 (D. Md. May 19, 2020) (denying compassionate release to a 60-year-old defendant with hypertension, diabetes, chronic kidney disease, and extreme obesity).

The medical records indicate that Zinner, age 62, receives on-going treatment for his medical conditions and that they are being well-managed. (ECF Nos. 167, 170.) While his medical conditions are serious, they do not establish an extraordinary and compelling reason for compassionate release. BOP records indicate that he has been designated as Care Level 1, "Healthy or Simple Chronic Care." (Mot. Comp. Release Ex. 4 at 2.) In addition, according to the BOP, Zinner was vaccinated with the Pfizer-BioNTech vaccine in March 2021. Many courts have ruled, "on the basis of present understanding, that the highly effective available vaccines dramatically affect whether an inmate's medical conditions constitute the 'extraordinary and compelling reason' required to further consider compassionate release." *United States v. Gregory*, No. CR 13-0334, 2021 WL 1909605, at *4 (D. Md. May 12, 2021) (collecting cases). Even with the spread of the latest variants, as stated previously, the "mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread." *Raia*, 954 F.3d at 597.

Zinner is housed at FCI Loretto, in the minimum-security satellite camp, which generally houses approximately 45 inmates. There are currently five positive inmate cases and three positive staff cases at FCI Loretto; no inmates and no staff at that facility have died of COVID-19; and there have been a total of 607 inmates and 69 staff members who tested positive and recovered, according to data available at www.bop.gov/coronavirus/ (updated daily at 3:00 p.m.)

12

(last visited January 3, 2022). Zinner cannot establish a particularized risk of contracting COVID-19 at FCI Loretto given the low number of positive cases there currently. Accordingly, for all the reasons set forth above, the Court finds that Zinner has not established an extraordinary and compelling reason for a reduction in his sentence based on his medical conditions and COVID-19. Thus, the motions for compassionate release (ECF Nos. 155, 169) and the Motion to Expedite Home Confinement (ECF No. 172) will be denied.

Furthermore, even if the Court found that Zinner had established an extraordinary and compelling reason for a reduction in his sentence, the Court does not, in its discretion, find a reduction in Zinner's sentence to be appropriate under the relevant § 3553(a) factors and non-binding policy statements. The Court finds that a reduction in Zinner's sentence would undermine the relevant § 3553(a) factors. In particular, a reduction in Zinner's sentence would undermine the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, and afford adequate deterrence, given the nature and circumstances of the underlying offense,[8] and Zinner's history and characteristics.[9]

Based on his projected release date of November 4, 2026, Zinner has served just over 50% of his 120-month sentence. Zinner has done well while he has been incarcerated on the instant conviction, having completed more than fifteen educational and vocational courses and having been subjected to no disciplinary actions. (Mot. Comp. Release Ex. 4 at 1-2; Mot. Comp. Release at 3; Probation Office Memorandum at 2.) But it is very concerning that Zinner

---

[8] As noted previously, the Court would ordinarily address a pending section 2255 petition before ruling on a compassionate release motion, since the section 2255 petition challenges the conviction for which the Defendant is incarcerated. In this case, the Court considers the record as presently established and makes no determination regarding the issues raised in the section 2255 petition. The *pro se* Motion to Strike the response filed by the United States will be denied, and the Court gives all related memoranda, responses, and exhibits due consideration as it reviews the motions for compassionate release.

[9] An early release to home confinement would also undermine the relevant § 3553(a) factors.

committed the instant offense *after* he was convicted in 1995 and served a previous federal sentence of sixty-eight months for racketeering, as described in the PSR. (PSR ¶ 57.)[10]

The Court finds that Zinner's sentence is reasonable and appropriate, and it is no greater than necessary to achieve the objectives of 18 U.S.C. § 3553(a). A reduction in Zinner's sentence would undermine the § 3553(a) factors and relevant policy statements.

## IV. CONCLUSION

For the reasons set forth herein, the Court will deny the *pro se* Motion for Compassionate Release (ECF No. 155), deny the Motion for Compassionate Release (ECF No. 169), deny the Motion to Expedite Release to Home Confinement (ECF No. 172), deny the *pro se* Motion to Strike (ECF No. 174), and grant the *pro se* Motion to Remove Counsel (ECF No. 178).

An appropriate Order shall issue.

Richmond, Virginia
Date: January 4, 2022

/s/
Roderick C. Young
United States District Judge

---

[10] It appears that the Defendant is also challenging this 1995 conviction, but that challenge is not before this Court. (*See* ECF No. 187 at 2; ECF No. 192.)

14